IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRADLEY BOMGARDNER d/b/a : CIVIL ACTION
BRAD BOMGARDNER CONCRETE :
:
v. :
:
STATE FARM FIRE AND :
CASUALTY, et al. : NO. 10-1287

MEMORANDUM

McLaughlin, J. September 14, 2010

   This action involves an insurance coverage dispute between the plaintiff, Brad Bomgardner d/b/a Brad Bomgardner Concrete ("Bomgardner") and the defendants, State Farm Fire and Casualty ("SFFC") and State Farm Mutual Automobile Insurance Company ("SFMA"). Bomgardner seeks a declaratory judgment that his claim is covered under his insurance policy with SFFC, damages for breach of the insurance contract, and damages pursuant to 42 Pa.C.S. § 8371, which permits special damages where an insurer has acted in bad faith toward the insured.

   The defendants move to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), arguing that Bomgardner fails to state a claim for insurance coverage or insurer bad faith, and that the complaint fails to state any claim against SFMA. For the reasons that follow, the Court grants the defendants' motion and dismisses the claims against SFFC and SFMA with prejudice.

I.   Factual Background

Bomgardner is in the "business of performing concrete related services" and on November 14, 2008, he installed a concrete floor at a residence under construction for Mr. and Mrs. Gallo. Compl. ¶¶ 3, 9. The general contractor for the Gallo project was D. Terry Miller & Associates ("DTM"). Compl. ¶ 11. The concrete that Bomgardner used was mixed and supplied by Pennsy Supply, Inc. Compl. ¶ 10.

Bomgardner was at all times relevant insured under a "Contractor's Policy" issued by SFFC that provided business liability coverage. Compl. ¶ 5. The policy states that SFFC "will pay those sums that the insured becomes legally obligated to pay as damages because of... property damage... to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments." The policy also provides that SFFC assumes the "right and duty to defend any claim or suit seeking damages payable under this policy." Contractor's Policy, Sec. II, Coverage L, p. 18, Ex. A to Pl. Compl.

The policy restricts business liability coverage for property damage to "property damage caused by an <u>occurrence</u> which takes place in the coverage territory during the policy period." <u>Id</u>. (emphasis added). "Occurrence" is defined as "an <u>accident</u>, including continuous or repeated exposure to substantially the

2

same general harmful conditions which result in bodily injury or property damage." Id. at 27 (emphasis added).[1]

In February 2009, DTM informed Bomgardner that there were problems with the floor he had installed at the Gallo residence due to spalling and delamination of the concrete. Compl. ¶ 11.  On January 13, 2010, DTM, through its counsel, sent a letter to Bomgardner and Pennsy demanding $25,897.42, the cost to DTM of repairing the floor.  Letter from Counsel for DTM to Bomgardner, Ex. B to Pl. Compl.  On January 27, 2010, Bomgardner notified SFFC of DTM's claim against him and requested coverage. Compl. ¶ 14.

As part of its investigation into Bomgardner's insurance claim, SFFC retained Astrotech to perform petrographic testing on the concrete in the Gallo home.  Compl. ¶ 16. Astrotech determined that the spalling and delamination were the result of both excess water in the concrete mix prepared by Pennsy and inadequate curing of the concrete.  Compl. ¶ 17; Astrotech Report, Ex. C. to Pl. Compl.

---

[1] The policy also lays out several "exclusions" - specific claims to which coverage does not apply.  SFFC relied on one of these exclusions (Exclusion 11(f)) in its May 2009 letter denying Bomgardner coverage.  SFFC Denial of Bomgardner's Claim ("SFFC Denial"), Ex. D to Pl. Compl.  Because Bomgardner's claim does not come within the terms of the insuring agreement, it is not necessary to determine whether his claim is also precluded by any of the policy exclusions.

3

In a letter dated May 22, 2009, SFFC denied Bomgardner coverage for his claim. SFFC explained that, based on Astrotech's findings, the defects in the concrete floor were considered "improper workmanship" and not an "occurrence" as required by the policy, and therefore his claim did not come within the insuring agreement. Furthermore, the letter stated, coverage would be excluded under Exclusion 11(f) of the policy. Compl. ¶¶ 18-19; SFFC Denial.

Bomgardner continued to press SFFC regarding his claim and requested a copy of the Astrotech report. Compl. ¶¶ 20-22. SFFC refused to provide the report on the grounds that it constituted work product of State Farm. Compl. ¶ 23. On July 10, 2009, Bomgardner's attorney wrote a letter to SFFC's Claim Team Manager, David Konefal-Shaer, asking SFFC to reconsider its refusal to provide the report and advising him that Bomgardner could obtain the report through discovery if he filed a lawsuit against SFFC. Letter to Konefal-Shaer, Ex. F to Pl. Compl. Mr. Konefal-Shaer responded three months later, on October 14, 2009, stating that Bomgardner's letter had only that day been brought to his attention and apologizing for the delay. Letter from Konefal-Shaer, Ex. G. to Pl. Compl. Mr. Konefal-Shaer confirmed that the Astrotech report was considered State Farm's work product and that SFFC would not voluntarily turn over a copy of the report to Bomgardner. Id. After Bomgardner commenced this

4

action, SFFC produced the Astrotech report in response to pre-pleading discovery. Compl. ¶ 30.

On March 5, 2010, Bomgardner brought an action against SFFC and SFMA in the Lancaster County Court of Common Pleas, alleging that SFFC wrongfully denied it coverage under the insurance policy. On March 25, 2010, the defendants removed the action to this court based on diversity of citizenship. The court heard oral argument on the motion to dismiss on September 8, 2010.

II. Analysis

Bomgardner asserts that his insurance claim comes within the definition of an "occurrence" and is therefore covered under the policy. He argues that because the underlying problems with the concrete were the fault of Pennsy - not Bomgardner - his was not a claim for "faulty workmanship." Bomgardner also contends that the problems with the floor were "unexpected and unintentional," therefore bringing his claim within the definition of an "accident" or "occurrence." Furthermore, he argues, his claim is not barred under any of the policy exclusions. He alleges that SFFC breached the insurance contract when it refused him coverage and that it acted in bad faith by, among other things, refusing to provide Bomgardner with a copy of

5

the Astrotech report and failing to respond to his request for the report in a timely manner.

SFFC argues in its motion to dismiss that settled Pennsylvania law precludes Bomgardner's argument that a claim based on faulty workmanship and breach of contract can ever be an "occurrence" for the purposes of a commercial liability policy. As such, SFFC asserts that there is no need to reach the issue of whether Bomgardner's claims are barred by the policy exclusions because his claim does not come within the terms of the insuring agreement at all. SFFC also argues that Bomgardner fails to allege sufficient facts to support a claim of bad faith. Finally, the defendants argue that Bomgardner does not state any claim against SFMA. Bomgardner agreed to dismiss SFMA from the action as there were no allegations made against it in his complaint.

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not required, a plaintiff cannot satisfy Rule 8 by making "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true, but should disregard any legal conclusions. The court must then determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, then the complaint has alleged, but it has not shown, that the pleader is entitled to relief. Iqbal, 129 S. Ct. at 1949.

A. The Meaning of "Occurrence"

The parties both submit that Pennsylvania law governs this action. In Kvaerner v. Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co., 908 A.2d 888, 899 (Pa. 2006), the Pennsylvania Supreme Court held that a claim for faulty workmanship is not an "occurrence" under commercial liability policies. Kvaerner, a coke battery builder, sought defense and indemnity from its insurer under two commercial liability policies after another company brought suit against it for breach of contract and breach of warranty when a coke battery Kvaerner had built was damaged. Id. at 891-92. The insurance provisions interpreted in Kvaerner are identical to the relevant provisions in the instant case. Id. at 897-98. In response to

7

the plaintiff's claim, National Union Fire Insurance Company argued that its policies only covered property damage caused by an "occurrence" and that there was no allegation of any "occurrence" resulting in damage.

As in the SFFC policy, the National Union policies defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." <u>Id</u>. at 897.  The court noted that the term "accident" is defined in the dictionary as "'[a]n unexpected and undesirable event,' or 'something that occurs unexpectedly or unintentionally.'" <u>Id</u>. at 897-98.  This, the court reasoned, "implies a degree of fortuity that is not present in a claim for faulty workmanship." <u>Id</u>. at 898.  The court noted that to hold otherwise "would be to convert a policy for insurance into a performance bond." <u>Id</u>. at 899.

The Pennsylvania Supreme Court also rejected the argument that faulty or negligent workmanship constitutes an "accident" if the insured did not intend for the subsequent damage to occur.  <u>Id</u>. n.9 ("We believe that this is an overly broad interpretation of accident, as the situation is rare indeed in which a contractor intends that the work product suffer injury.... [W]e believe that CGL [commercial general liability] policies are not the proper means to protect against such risks.").

In Nationwide Mutual Insurance Co. v. CPB International, Inc., 562 F.3d 591, 598 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit reviewed relevant Pennsylvania decisions and concluded that an underlying claim alleging breach of contract would not be considered an "occurrence" triggering coverage under a commercial liability policy. In CPB, the insurer sought a declaratory judgment that it was not required under the insurance policy to defend the insured in a breach of contract action. Id. at 593. The policy in CPB was also limited to property damage resulting from an "occurrence." Id. at 594. The Third Circuit explained that the "purpose and intent of a general liability insurance policy is to protect the insured from essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking." Id. at 598 (quoting Pennsylvania Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc., 831 A.2d 1178, 1181 (Pa. Super. Ct. 2003)) (quotations omitted).

In light of Kvaerner and CPB, Bomgardner's argument that his claim is covered under the SFFC policy must fail as a matter of Pennsylvania law. DTM's complaint[2] against Bomgardner is effectively a contractual claim for faulty workmanship. Claims based on defective workmanship and claims arising out of a

---

[2] As of the date of this memorandum and order, the Court is not aware that DTM has filed a lawsuit against Bomgardner.

9

breach of contract do not allege an "occurrence," and therefore do not trigger coverage under a commercial liability policy such as this one.

Although Bomgardner asserts that his claim is not one for faulty workmanship because the blame lay with Pennsy, this argument is unavailing. Assuming, as we must, that the fault was entirely Pennsy's, the underlying claim is nonetheless one based on improper workmanship. That Pennsy was responsible for the defective concrete does not convert the claim into one based on an "accident." Indeed, the court in <u>Kvaerner</u> rejected the insured's argument that its faulty workmanship claim was covered under the insurance policy, even though the insured alleged that its subcontractor was actually to blame for the defective work product. <u>Kvaerner</u>, 908 A.2d at 893. Likewise, in <u>Millers Capital Insurance Co. v. Gambone Brothers Development Co.</u>, 941 A.2d 706, 715 (Pa. Super. Ct. 2007), in which the Superior Court applied <u>Kvaerner</u>, the court stated that claims based on faulty workmanship, whether the fault of the insured or a subcontractor, "cannot be considered 'occurrences'... as a matter of plain language and judicial construction."

Finally, that the resulting problems with the floor were "unexpected and unintentional" does not bring this claim within the definition of "occurrence." The Supreme Court in <u>Kvaerner</u> squarely rejected this argument and this court must do

breach of contract do not allege an "occurrence," and therefore do not trigger coverage under a commercial liability policy such as this one.

Although Bomgardner asserts that his claim is not one for faulty workmanship because the blame lay with Pennsy, this argument is unavailing. Assuming, as we must, that the fault was entirely Pennsy's, the underlying claim is nonetheless one based on improper workmanship. That Pennsy was responsible for the defective concrete does not convert the claim into one based on an "accident." Indeed, the court in <u>Kvaerner</u> rejected the insured's argument that its faulty workmanship claim was covered under the insurance policy, even though the insured alleged that its subcontractor was actually to blame for the defective work product. <u>Kvaerner</u>, 908 A.2d at 893. Likewise, in <u>Millers Capital Insurance Co. v. Gambone Brothers Development Co.</u>, 941 A.2d 706, 715 (Pa. Super. Ct. 2007), in which the Superior Court applied <u>Kvaerner</u>, the court stated that claims based on faulty workmanship, whether the fault of the insured or a subcontractor, "cannot be considered 'occurrences'... as a matter of plain language and judicial construction."

Finally, that the resulting problems with the floor were "unexpected and unintentional" does not bring this claim within the definition of "occurrence." The Supreme Court in <u>Kvaerner</u> squarely rejected this argument and this court must do

so, as well.  Kvaerner, 908 A.2d at 899, n.9.  Because the Court finds that Bomgardner's claim does not arise out of an "occurrence" and therefore is not covered under his policy, there is no need to determine whether his claim is also precluded under any of the policy exclusions.

      The Court is mindful that a motion to dismiss may only be granted where, accepting as true all of the allegations in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief under the law.  Fowler, 578 F.3d at 210.  The facts alleged in the complaint do not give rise to a plausible claim for relief.  The complaint also attached numerous exhibits, which provide ample factual background to make a determination on the merits.  Furthermore, although the Court offered Bomgardner's counsel an opportunity to suggest what additional facts might be revealed through discovery that would support a plausible claim for insurance coverage, she was not able to offer any.  Oral Arg., 5:17-24, 12:16-23.  Given the insufficiency of the complaint, counsel's inability to suggest other relevant facts that discovery might disclose, and the fact that DTM's claim against Bomgardner is one based entirely on allegations of faulty workmanship, the Court finds that a dismissal on the merits is appropriate at this stage.

B. <u>Insurer Bad Faith</u>

There is no common law remedy in Pennsylvania for bad faith conduct on the part of insurers. The Pennsylvania legislature has instead created a statutory remedy in 42 Pa.C.S. § 8371, which allows a court to award special damages, including punitive damages and attorney's fees, if it finds that an insurer has acted in bad faith toward an insured.

To recover under a claim of bad faith under § 8371 the plaintiff must show that the insurer (1) "did not have a reasonable basis for denying benefits under the policy," and (2) "knew or recklessly disregarded its lack of reasonable basis in denying the claim." <u>Terletsky v. Prudential Property and Casualty Insurance Co.</u>, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). A bad faith claim implies a "dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." <u>Id</u>. at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). Examples of insurer conduct that courts have found to constitute bad faith include frivolous or unfounded denials, a failure to investigate into the claim, and a failure to communicate with the insured. <u>Hanover Insurance Co. v. Ryan</u>, 619 F. Supp. 2d 127, 140 (E.D. Pa. 2007).

Bomgardner's bad faith claim offers little more than legal conclusions and bare allegations of wrongdoing with

insufficient factual support. See Iqbal, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."). Specifically, Bomgardner alleges that SFFC's denial of his claim, its refusal to turn over the Astrotech report before he filed a lawsuit, and Konefal-Shaer's delay in responding to his second request for the report, amount to bad faith. Assuming these allegations are correct, they do not amount to bad faith conduct on the part of SFFC.

SFFC's denial of Bomgardner's claim was not only reasonable, but proper under Pennsylvania law. Because SFFC had a reasonable basis for denying coverage, Bomgardner's claim for recovery under § 8371 must fail. See Terletsky, 649 A.2d at 688. Furthermore, as Bomgardner alleges in his complaint, SFFC investigated his claim, retained Astrotech to perform tests on the concrete, and provided Bomgardner with an answer to his request and explanation of the denial. Bomgardner's complaint fails to make out a claim that SFFC acted unreasonably, let alone "with dishonest purpose."

C.  <u>Dismissal of SFMA</u>

Defendants argue - and Bomgardner agrees - that the complaint does not make any allegations against SFMA and it should be dismissed from the action.

III. <u>Conclusion</u>

For the reasons herein stated, the Court grants the defendants' motion to dismiss this case with prejudice. Bomgardner fails to state a claim for insurance coverage, breach of contract or bad faith.  Bomgardner fails to state any claim against SFMA.

An appropriate order shall issue separately.